# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 12, 2015

## STATE OF TENNESSEE v. KIMBERLY ANN PHILLIPS

**Appeal from the Circuit Court for Lawrence County**
**Nos. 31004, 31349      Stella L. Hargrove, Judge**

_____

### No. M2015-00659-CCA-R3-CD – Filed December 29, 2015

_____

The Defendant-Appellant, Kimberly Ann Phillips, appeals the trial court's revocation of her probation and reinstatement of her effective eight-year sentence in the Department of Correction. On appeal, the Defendant-Appellant argues that the trial court abused its discretion because no "substantial" violation of her probation had occurred. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Claudia S. Jack, District Public Defender; and R.H. Stovall, Jr., Assistant Public Defender, for the Defendant-Appellant, Kimberly Ann Phillips.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Brent A. Cooper, District Attorney General; and Christi Thompson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Defendant-Appellant was indicted by the Lawrence County Grand Jury for filing a false report, two counts of aggravated robbery, unlawful possession of a firearm, possession of a Schedule III controlled substance, possession of a Schedule IV controlled substance, possession of a Schedule VI controlled substance, and possession of drug paraphernalia. On May 13, 2013, pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), the Defendant-Appellant entered a negotiated "best interests" guilty plea to filing a false report, unlawful possession of a firearm, possession of a Schedule III controlled substance, and robbery. In accordance with the plea agreement, the State dismissed her remaining charges. She received an effective eight-year sentence, which was suspended

to eight years on supervised probation.  On November 26, 2014, the Defendant-Appellant was given a mandatory drug screen and tested positive for benzodiazepines, opiates, and buprenorphine.  A month later, on December 27, 2014, she was arrested for driving under the influence (DUI), first offense, and violation of the Tennessee implied consent law.[1]  On January 9, 2015, a warrant was filed alleging that she had violated her probation by failing a drug screen, being arrested and incurring new charges, and posing a threat to herself and others by driving under the influence.

At the March 11, 2015 hearing, Bobby Long, a probation and parole officer, testified that he began to supervise the Defendant-Appellant on May 13, 2013.  On November 26, 2014, he administered a drug screen during her reporting, which field tested positive for marijuana, opiates, benzodiazepine, oxycodone, and buprenorphine.  A follow-up laboratory test yielded positive results for only benzodiazepines, opiates, and buprenorphine.  Officer Long noted that the Defendant-Appellant had informed him that she had prescriptions for Hydrocodone (Lortab) and Clonazepam (Klonopin).  On cross-examination, he could not recall whether she had actually showed him her prescriptions, but conceded, "[i]t's possible that she could have brought in the bottles."  He had no explanation for why his field test picked up marijuana and oxycodone but that the follow-up laboratory confirmation test did not.  He stated that it was possible that he misread the field test.

Officer Long also testified that the Defendant-Appellant did not have a prescription for Alprazolam (Xanax).  He was not familiar with every medication that she tested positive for; however, he knew that she tested positive for more drugs than she had prescriptions.  He agreed that the failed drug screen was the Defendant-Appellant's first violation of her probation and that she had consistently reported, made payments, and maintained employment throughout the time of her supervision.  Officer Long filed a violation warrant for the Defendant-Appellant on January 9, 2015.  In addition to the failed drug screen, he recited two other bases for the warrant:

> She violated Rule Number One that said, "I will obey the laws," by being arrested on/or about 12/27/2014 for a D.U.I., and Violation of the Implied Consent in Lawrence County.
>
> . . .

---

[1] Under the implied consent statute, anyone who drives a car in this state "is deemed to have given consent to a test or tests for the purposes of determining the alcoholic content of that person's blood[.]"  T.C.A. § 55-10-406(a) (2012).

And then on Rule Fourteen. It was a technical for behaving in a manner that poses a threat to others and herself by operating a motor vehicle while under the influence of drugs and/or alcohol.

Trooper Phillip Long testified that he arrested the Defendant-Appellant on December 27, 2014, in Lawrence County for DUI and violation of the implied consent law. On the day of the offense, he was at a stop sign behind a white, four-door Kia at the intersection of Old Florence Pulaski Road and Rabbit Trail. He observed the Defendant-Appellant, who was driving the Kia, pull out into the intersection in front of a truck. He stated, "The truck swerved and skidded. She hammered down and jetted on across." He said that an accident had almost occurred and that once he caught up to the Kia, he stopped the car to issue a due care citation.[2] He noted that the car did not stop immediately and that when he approached it, the Defendant-Appellant was yelling out that she was sorry.

Trooper Long testified that when he asked the Defendant-Appellant for her information, he noticed that her pupils were very dilated. He further stated that "[s]he fumbled around trying to get her license and registration" and was crying and hysterical. When he asked her why she did not stop at first, she replied that she was going to a Christmas party at her aunt's house. The Defendant-Appellant also told him that her passenger had leaned forward and that she could not see the truck coming. Trooper Long noted that there was a child in the car with her. After preparing the due care citation, Trooper Long returned to the Kia, and the Defendant-Appellant was still hysterical. He asked her if she was on medication and she told him that she was prescribed Lortab and Klonopin. He noted that the Defendant-Appellant told him that she had taken her medications that day, but did not say when she took them.

Trooper Long then testified that he instructed the Defendant-Appellant to step out of the car and perform four field sobriety tests. The first test administered was the horizontal gaze nystagmus (HGM), and Trooper Long detected no clues for this test. The second test was the nine-step walk-and-turn. During this test, the Defendant-Appellant did not stay in the stance that Trooper Long put her in during the instruction stage, did not count out loud, stopped before she turned, turned wrong, and took ten steps rather than nine because she lost count. The third test was the one-leg stand test, and no clues were detected for this test. The last test was the finger to nose. During this test, the Defendant-Appellant performed incorrectly on three of the six finger-to-nose touches by "using the pad of her finger on the bridge of her nose instead of tip-to-tip" or "miss[ing]

---

[2] Under Tennessee Code Annotated section 55-8-136, drivers in this state are required to "exercise due care by . . . devoting full time and attention to operating the vehicle, under the existing circumstances as necessary in order to be able to see and . . . avoid colliding with any other vehicle[.]" T.C.A. § 55-8-136(b).

under her nose." Based on her performance and Trooper Long's training and experience, the Defendant-Appellant was arrested for DUI and taken to the Lawrence County jail. Trooper Long said that she refused to consent to a blood test even after he read her the implied consent statute.

On cross-examination, Trooper Long testified that two or more clues on the nine-step walk-and-turn test predict a level of intoxication of .08 or greater. He agreed, however, that the Defendant-Appellant did not smell of alcohol and that he did not have a suspicion of alcohol. He also agreed that two of the four field sobriety tests yielded no clues at all that she was under the influence. He stated further that, even though he asked the Defendant-Appellant several times to consent to a blood test, "[s]he said [that] she didn't want to give blood[] because she took her medicine and it[ was] going to show up in her blood."

Casey Wilburn, the Defendant-Appellant's fiancé, testified that he was riding with the Defendant-Appellant from her mother's house to her aunt's Christmas party when she was pulled over by Trooper Long. Wilburn had been with her for about an hour that day and stated that she did not appear to be impaired. He believed that she did not see the truck coming because he was leaned forward in his seat, not because of the effects of her medicine. On cross-examination, he testified that he and the Defendant-Appellant had been together for two years but later said they had been together for five years. He said that he knew she was on probation when he met her. He also said that she took three Lortabs a day for back pain and Clonazepam for anxiety. Wilburn testified that, on the date of the Defendant-Appellant's arrest, he had been at work and did not know what she had done that day before he arrived at her mother's house. He confirmed that her nine-year-old child had been in the car with them and that the child was not his.

Mandy Phillips, the Defendant-Appellant's mother, testified that she saw the Defendant-Appellant at around 1:00 p.m. on the day she was arrested. Mrs. Phillips had taken her granddaughter to the Defendant-Appellant, who was the child's biological mother, so that they could attend the family Christmas party. She stated multiple times that the Defendant-Appellant did not appear impaired and that she would not have let her granddaughter go if she had been concerned about the Defendant-Appellant's ability to drive. She was aware that the Defendant-Appellant took Clonazepam and Lortab, but stated that she had never seen her impaired from the medications. On cross-examination, Mrs. Phillips testified that her granddaughter lived with her biological father and that the Defendant-Appellant had only supervised visitation. Either Mrs. Phillips or the Defendant-Appellant's father, Marvin Phillips, had to be present during her supervised visitation. Mrs. Phillips testified that the child's father "got mad" and obtained a court order for supervised visitation after the Defendant-Appellant's initial arrest for robbery.

She was unaware of the exact terms of the court order but knew that if her granddaughter spent the night, it was either at her house or at the Defendant-Appellant's father's house.

Marvin Phillips, the Defendant-Appellant's father, testified that he had seen the Defendant-Appellant at his house for a few minutes on December 27, 2014. He said that he saw the Defendant-Appellant right before she got in the car and that she had been emotionally upset. He explained that there had been a falling out between the Defendant-Appellant and her brother and that "she was emotionally upset about that pretty bad." He noted that the Defendant-Appellant was driving his car and that he would not have let her drive off in it with his granddaughter if he thought she was impaired.

The Defendant-Appellant testified that she had shown Probation Officer Long her prescriptions for Hydrocodone (Lortab) and Clonazepam, but agreed that she did not have a prescription for Xanax. She said that, before her drug screen, she had taken a Xanax pill from a family member because she was anxious and did not have her Clonazepam with her. She admitted that she realized that she could violate her probation just by taking the Xanax and that it was "[a] bad decision." On cross-examination, she testified that she had been taking Lortab for chronic pain since 2010 and Clonazepam for anxiety since 2006. However, she had not taken anything since January 13, 2015, and did not take any medicine on the day of the hearing.

The Defendant-Appellant also testified that, on December 27, 2015, she was driving from her mother's house, where she had been all day, and pulled out from a stop sign in front of a truck. She said that her visibility was blocked by a little hill crest and by her fiancé, who was leaned forward in the passenger seat, and that she had to hit the accelerator to miss being hit by the truck. She said that she had taken her medicine as prescribed that day and had nothing else in her system. She also noted that none of her family members had told her that she did not need to be driving.

At the conclusion of the hearing, the trial court revoked the Defendant-Appellant's probation and ordered her to serve her original sentence in confinement, with credit for time served. In doing so, the court stated:

> All right. Kimberly Ann Phillips was placed on probation, upon her plea, on May 13th, 2013, to three felonies: False Report; Robbery, and a weapon's charge, running consecutively for a total effective sentence of only eight years. She's on probation.
>
> The warrant is filed January the 9th, 2015. First ground based upon the new arrest for D.U.I., Implied Consent, and Due Care. The offense date is December 27, 2014.

It's this Court's understanding that at revocation all the Court needs to hear is sufficient testimony and proof to allow this Court to make an intelligent decision as to the new arrest, and I have done that. I find that the State has carried its burden of proof as to that ground.

Also, the second ground, the Court finds the State has carried its burden of proof and that she did not have a prescription for all that she tested positive too, those drugs, on November 26th, 2014.

And also, the Court finds the State has carried its burden of proof that her actions there surrounding the charge of D.U.I., Implied Consent, and others posed a threat to herself and others.

And this Court revokes the probation, the eight-year probation of Kimberly Ann Phillips.

The court then entered a written revocation order, and it is from this order that the Defendant-Appellant now timely appeals.

## ANALYSIS

On appeal, the Defendant-Appellant argues that the trial court abused its discretion by revoking her probation because no "substantial" violation of her probation had occurred. She challenges the sufficiency and weight of the evidence presented at the revocation hearing. She also asserts that the court should have considered an alternative sentence. The State argues that the evidence provided a sound basis for full revocation of the Defendant-Appellant's probation and reinstatement of her original sentence. Upon review, we agree with the State.

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." T.C.A. § 40-35-311(e) (2012). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id. (citing Harkins, 811 S.W.2d at 82). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words,

begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3-CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar. 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); T.C.A. §§ 40-35-308, -310, -311 (2012).

In the present case, it is undisputed that the Defendant-Appellant was arrested and incurred new charges while on probation. Although she argues that there was insufficient evidence to support the trial court's order of revocation, we note that "proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). Here, the Defendant-Appellant testified that she had taken two Lortabs and two Klonopins on December 27, 2014, prior to her arrest. Trooper Long testified that he observed her pull in front of a truck, nearly causing a collision. He said that she was hysterical and that her pupils were dilated. After administering four field sobriety tests, he believed that the Defendant-Appellant was impaired and arrested her for DUI. She subsequently refused to submit to a blood test in violation of the implied consent statute. See T.C.A. § 55-10-406(a). Based on the aforementioned proof, we conclude that the trial court's revocation of the Defendant-Appellant's probation was supported by substantial evidence. See State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). Once the trial court determined that the Defendant-Appellant violated the terms of her probation, it was authorized "to cause execution of the defendant's original judgment as it was originally entered." Hunter, 1 S.W.3d at 647 (citing T.C.A. § 40-35-310).

The Defendant-Appellant also requests an alternative sentence, such as Community Corrections or "something less than a full revocation." However, this court has repeatedly held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999). Based on the record, we cannot conclude that the trial court abused its discretion in ordering the Defendant-Appellant to serve the balance of her original sentence in confinement. Accordingly, she is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE